REPORTER'S RECORD
VOLUME 75 of 84 VOLUMES

TRIAL COURT CAUSE NO. 20020D00230

| | | |
|---|---|---|
| THE STATE OF TEXAS, | ) | IN THE DISTRICT COURT OF |
| Plaintiff | ) | |
| VS. | ) | EL PASO COUNTY, TEXAS |
| | ) | |
| DAVID RENTERIA, | ) | |
| Defendant | ) | 41st JUDICIAL DISTRICT |

FILED IN
COURT OF CRIMINAL APPEALS
JUN 0 4 2009
Louise Pearson, Clerk

---------------------------------------

Motion For New Trial

Monday, July 21, 2008

---------------------------------------

On the 8th day of July 2008 the following proceedings came on to be heard in the above-entitled and numbered cause before the Honorable Mary Anne Bramblett, Judge Presiding, held in El Paso, El Paso County, Texas:

Proceedings reported by machine shorthand.

ORIGINAL

*Lisa Marie De Mello, CSR*
*Official Court Reporter - Council of Judges Administration*

APPEARANCES

| | |
|---|---|
| Lori Hughes | SBOT NO. 00786275 |
| Diana Meraz | SBOT NO. 13942600 |
| Jaime Esparza | SBOT NO. 06666450 |

Office of the District Attorney
500 East San Antonio, Room 201
El Paso, Texas  79901
Phone:  (915) 546-2059
Fax:  (915) 533-5520
ATTORNEYS FOR THE STATE OF TEXAS


| | |
|---|---|
| Jaime Gandara | SBOT NO. 07611900 |
| Edythe Payan | SBOT NO. 00791415 |
| Greg Velasquez | SBOT NO. 20540300 |

Office of the Public Defender
500 East San Antonio, # 501
El Paso, Texas  79901
Phone:  (915) 546-8185
Fax:  (915) 546-8186
ATTORNEYS FOR THE DEFENDANT

# CHRONOLOGICAL INDEX
## VOLUME 75 OF 84 VOLUMES
### Motion For New Trial

|  | PAGE | VOL. |
|---|---|---|
| **MONDAY, JULY 21, 2008** | | |
| Announcements | 004 | 75 |
| Motion For New Trial | 004 | 75 |
| Adjourned | 014 | 75 |
| Court Reporter's Certificate | 015 | 75 |

```
01:59PM

02:00PM

02:00PM



02:00PM



02:00PM
```

1                    (Monday, July 21, 2008)
2                    (Open Court, defendant not present)
3               THE COURT: This is Cause Number 20020D00230;
4  the State of Texas Versus David Renteria.
5               Mr. Renteria was convicted of capital murder
6  in this Court some -- a little while -- some time ago, not
7  too long ago. And the defendant through his attorney has
8  filed a motion for new trial. It is scheduled for a
9  hearing today.
10              Mr. Velasquez, are you ready to proceed on
11 behalf of Mr. Renteria?
12              MR. VELASQUEZ: Yes, Your Honor. But when I
13 got the notice you had notified the writ lawyer and telling
14 them that the case was set for a hearing. And I presume
15 that's why we're here. I just showed up because our name
16 didn't appear on it.
17              THE COURT: I don't understand what you're
18 saying.
19              MR. VELASQUEZ: The notice gave notice to the
20 writ lawyer to appear here and never gave us notice to
21 appear here, Your Honor.
22              THE COURT: Well, that must have been just an
23 error on behalf of my secretary here because the motion for
24 new trial was filed by you.
25              MR. VELASQUEZ: Yes, Your Honor. And I

1 thought, you know, God, he's fast, he filed a motion for
2 new trial also.
3     THE COURT:  Well, we're here to hear your
4 motion.  Are you ready to proceed on it --
5     MR. VELASQUEZ:  I am, Your Honor.
6     THE COURT:  -- or do you need some time on it?
7     MR. VELASQUEZ:  No.  I'm ready, Your Honor.
8 But I'm just saying I anticipated him being here, and I was
9 going to try to dovetail myself right after him, Your
10 Honor, but --
11     THE COURT:  Well, I don't know --
12     MR. VELASQUEZ:  -- I'm ready to appear.
13     THE COURT:  Yeah.  I don't know that he's
14 filed anything yet.  Nothing's come across my desk that
15 I've noticed.  So I don't know if he's filed anything yet.
16     MR. VELASQUEZ:  Okay.
17     THE COURT:  My understanding is is that he's
18 very sick today and he had other -- another hearing in this
19 Court as well this afternoon that he won't be able to
20 appear for.
21     So it would probably be best for you to call
22 him and if you need to speak with him about any of that.
23     MR. VELASQUEZ:  No, no.  I was just surprised
24 that, you know -- I'll -- I'll be quiet, Your Honor.  But I
25 thought you had set it down for a hearing, and I was going

1 to try to follow him after -- after him for the hearing,
2 Your Honor. So -- but I'm prepared.
3     THE COURT: Okay. Well, it is the wrong
4 lawyer that was notified for this hearing. It should have
02:02PM 5 been you.
6     MR. VELASQUEZ: Yes, ma'am. That's why I'm
7 still here, Your Honor.
8     THE COURT: Is the State ready to proceed on
9 the motion for new trial filed by Mr. Velasquez?
02:02PM 10     MS. HUGHES: Yes, ma'am. Lori Hughes and
11 Diana Meraz for the State as well as the District Attorney.
12 We're ready to proceed.
13     THE COURT: All right. Mr. Velasquez, you may
14 present your motion.
02:02PM 15     MR. VELASQUEZ: Yes, Your Honor. Basically,
16 what I would like the Court to -- direct the Court's
17 attention on the first -- the first issue I'd like the
18 Court to address will be the sufficiency of the evidence on
19 legal and factual insufficiency, Your Honor, regarding the
02:02PM 20 issue of future dangerousness.
21     And particularly since the District Court has
22 jurisdiction to order new trials on either a factual or a
23 legal insufficiency, Your Honor, I would like the Court to
24 address both of them.
02:02PM 25     The Court of Appeals also has jurisdiction to

1  overturn a case on legal and factual insufficiency. The
2  only difference between the Court of Criminal Appeals is
3  the Court of Appeals can only reverse it on legal
4  insufficiency, Your Honor, and the factual insufficiency
02:03PM  5  only applies to the trial Court and the Court of Appeals,
6  Your Honor.
7           And basically what we'd like to address the
8  Court is that the State failed to prove that Mr. Renteria
9  is going to be a future danger regarding his future
02:03PM 10  dangerousness, Your Honor. And basically, they didn't
11 present any evidence regarding that. They never
12 contradicted our evidence that we presented.
13          We presented testimony from various
14 individuals who indicated to the jury that Mr. Renteria was
02:03PM 15 not a future danger. And as a matter of fact, evidence was
16 introduced that Mr. Renteria was going to more than likely
17 die in prison and never be paroled out, Your Honor.
18          Evidence was also introduced that Mr. Renteria
19 would be more of a victim in the prison instead of a
02:04PM 20 predator, Your Honor, based on his stature and the crime
21 that he had committed. And we presented evidence to show
22 the Court that he wouldn't be a danger to anyone in prison,
23 Your Honor.
24          And so based on that, we would ask the Court
02:04PM 25 to find the evidence legally insufficient as to future

1 dangerousness and also factually insufficient as to future
2 dangerousness.
3     The State has not -- they have not introduced
4 any evidence regarding future dangerousness, Your Honor.
5 All they did is argue that based on the facts of the case
6 that he was going to be a future danger, Your Honor. They
7 never addressed the issue as to what type -- of whether he
8 was going to be a future danger in the community that he
9 was going to reside in.
10     And we presented evidence that more than
11 likely Mr. Renteria was going to permanently reside in TDC
12 and he wouldn't be a future danger to anyone in prison,
13 Your Honor.
14     THE COURT: Any response by the State?
15     MR. ESPARZA: Your Honor, I believe the State
16 may rely on the actual crime of which he was convicted. In
17 determining future dangerousness the case law is very clear
18 there.
19     The State also presented evidence of his other
20 bad acts as well. The experts that the defense presented I
21 think contradicted what they initially were set out to
22 testify to.
23     One expert, Dr. Cunningham, asserted that
24 under cross-examination that the defendant would be a
25 danger in the free world, so if he just goes to prison,

1  we're just talking that issue. He also indicated that the
2  result of his tests -- he wasn't quite frank except under
3  cross-examination in regards to his analysis of whether or
4  not the defendant would be a danger in prison.
5      Plus I think Dr. Cunningham's testimony as a
6  whole was not all that valid even through voir dire
7  examination when he asserted that -- or he was going to
8  assert before the jury that somehow the defendant's sexual
9  behavior or the fact that he was somewhere in the vicinity
10 of a sexual predator or some violation had occurred in a
11 high school or in his elementary school, somehow that
12 affected him.
13     Clearly on -- after voir dire examination the
14 defense decided not to present that testimony to the jury,
15 which I do believe that the Court can be made aware of as
16 to the credibility of Dr. Cunningham as well.
17     But all in all, I don't believe that on this
18 ground the defense has properly shown any reason for the
19 granting of a new trial. Clearly the State can rely on the
20 instant case, and the State can rely on his prior bad acts
21 as well.
22     THE COURT: Has the State filed any answer to
23 the motion for new trial? If you have, it's not in the
24 file. That's why I'm inquiring.
25     MR. ESPARZA: Your Honor, we have not.

1        THE COURT: Anything else, Mr. Velasquez?
2        MR. VELASQUEZ: Your Honor, that's basically
3   it, Your Honor.
4        Again, there's case law that I presented in
5   the motion that the Court of Criminal Appeals has directed
6   the attention saying that you need to place the individuals
7   in the -- in the society that he's going to reside for the
8   rest of his life. The fact that he might go out and commit
9   a crime outside the prison system is irrelevant to this,
10  Your Honor.
11       There's some case law that I presented where a
12  woman was charged with killing infant children that she
13  had. And the Court said that they failed to prove evidence
14  that if she got out of prison that she was going to be a
15  danger to infants, and that when she got out she'd be about
16  65 years old, if she stayed there 40 years. And the danger
17  of her having children and killing the children was too
18  remote.
19       And the State failed their burden of proof to
20  show that she was a future danger to the actual victims
21  that she had committed which were her own children. Your
22  Honor.
23       Using that analogy, Your Honor, the evidence
24  that was presented by Dr. Cunningham saying that based on
25  what he knows of the prison system that he is actually

going to serve out his complete sentence and he is more than likely going to die in prison.

So the fact that he could be a future danger in the free world doesn't come into play in this, Your Honor. They failed to prove that he's going to be a future danger in the community that he's going to reside, Your Honor, not of some future community that he might reside, Your Honor.

And to that extent, Your Honor, they failed to prove beyond a reasonable doubt that Mr. Renteria is a future danger to the community that he's going to be residing, which would be TDC, and it would be taken to -- into account the the fact that he's serving stacked sentences for ten and 20 years, Your Honor, and then you do the other 40 years, Your Honor. He'll actually serve more than 70 years.

He is 39 years old, Your Honor. He is not going to get out of prison. So the fact that he was a future danger in the free society would be irrelevant as to whether he's a future danger inside the community that he's going to reside for the rest of his life, Your Honor.

THE COURT: Any response to that by the State?

MR. ESPARZA: No, Your Honor. I believe actually, Your Honor, we litigated these issues before you during the trial.

1         The stacked motion I don't think is -- is
2 accurate the way it's been presented by the defense to you
3 today, clearly, that when they put on their expert during
4 voir dire exam.
5         The Court is not aware of -- and nor can the
6 Court apply the parole law as the defense has just stated.
7 We do not know exactly how much time he would spend as a
8 result of the prior two offenses which were stacked.
9         All of that evidence, though, was given to the
10 jury. There was evidence that there was a stacking of one
11 of the offenses. I think the Court remembers when -- when
12 we corrected the judgment.
13         But all of these issues were in my opinion
14 fairly and fully developed before the Court and before the
15 jury. And it's clear that the State can rely on the
16 instant offense. The instant offense is more than just
17 what he did. It is a telling of what he is like and what
18 he would do.
19         And in this case, in this extreme case, we now
20 know that nothing is more important to the defendant than
21 himself and all else -- all else does not matter. And the
22 offenses that the State presented in the punishment phase
23 subsequent to the instant offense -- well, actually, the
24 indecency was before.
25         But all of those cases were there to indicate

```
              the type of person that he is and the type of person that
              he will be and the way we could predict what he would do if
              he is in a similar situation, whether it's in the free
              world or whether he's in prison.  Clearly, the jury
02:11PM       understood that when they rendered their verdict.
                        And I think there's substantial evidence here
              in this -- in this particular issue that we're discussing
              at the moment for -- for the Court to overrule their
              request.
02:11PM                 I have one other item, Your Honor.  I walked
              in late, and I apologize.  But I note that the defendant is
              not here.  Have we waived his presence on the jury [sic] or
              is it not necessary that he needs to be here?  I just
              thought we'd get that on the record.
02:12PM                 MR. VELASQUEZ:  We waive, Your Honor.
                        THE COURT:  All right.  Well, there was --
              he's already off at TDC, I assume, because he's not in the
              county jail any longer.  Correct?
                        MR. GANDARA:  That's correct, Your Honor.  We
02:12PM       understood that when we got the setting and that he was
              going to be out.  And there's no -- no problems with the
              fact that we're hearing this motion in his absence.
                        THE COURT:  All right.
                        MR. ESPARZA:  I'm sure that the defendant is
02:12PM       aware of this hearing and knows that we're going forward?
```

1        MR. GANDARA: He knows we're appealing and he
2 knows we've filed a motion for new trial.
3        THE COURT: All right. And I see there's
4 other items in your brief that -- in your motion that I
5 have taken a look at. And the Court is going to deny your
6 motion for new trial in its entirety.
7        MR. VELASQUEZ: Thank you, Your Honor.
8        THE COURT: You may be excused.
9        (Adjourned)

COURT REPORTER'S CERTIFICATE

THE STATE OF TEXAS)
COUNTY OF EL PASO )

I, LISA MARIE DE MELLO, CSR, RPR, Official Court Reporter in and for the Council of Judges Administration, El Paso County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, admitted by the respective parties.

I further certify that the total cost for the preparation of this Reporter's Record, 7/21/08, is $__ and will be paid by El Paso County.

WITNESS MY OFFICIAL HAND this the 14th day of MAY 2009.

_____
LISA MARIE DE MELLO, Texas CSR 3313
Expiration Date: 12-31-2009
El Paso County Council of Judges
500 East San Antonio Street, Suite 101
El Paso, Texas  79901
(915) 546-2000 ext. 4352

*Lisa Marie De Mello, CSR*
*Official Court Reporter - Council of Judges Administration*