## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-70009

DAVID SANTIAGO RENTERIA,

    Petitioner - Appellant

v.

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

    Respondent - Appellee

United States Court of Appeals<br>
Fifth Circuit<br>
<b>FILED</b><br>
May 21, 2020<br>
Lyle W. Cayce<br>
Clerk

Appeal from the United States District Court
for the Western District of Texas
USDC 3:15-CV-62

Before JONES, ELROD, and ENGELHARDT, Circuit Judges.

PER CURIAM:*

    David Renteria seeks a certificate of appealability to appeal the district court's denial of his federal habeas corpus petition under 28 U.S.C. § 2254. We find that Renteria has not shown that jurists of reason could debate whether the district court erred in denying his petition, and so we deny his application.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-70009

I.

On November 18, 2001, five-year-old Alexandra Flores disappeared from a Wal-Mart store where she was shopping with her parents. The next day, in an alley sixteen miles from the Walmart, her body was discovered—nude, partially burned, and with a plastic bag over her head. A medical examiner found that the girl had received two blows to the head and was manually strangled before being set on fire.

Several people observed Renteria and his van at the Walmart on the day Flores disappeared. One of those people was a Walmart security guard who recalled speaking with Renteria because he had left his van running outside the store. Walmart surveillance video showed a man—wearing clothing resembling Renteria's—walking out of the store with Flores. A search of Renteria's van disclosed blood stains with Flores' DNA. A latent print lifted from the plastic bag found over Flores' head matched Renteria's palm print.

Renteria was arrested in El Paso, Texas, on December 3, 2001, and charged with capital murder in the death of five-year old Alexandra Flores. At that time, he was a 32-year-old registered sex offender on probation for committing an indecency offense against an eight-year-old girl. The day of his arrest, police obtained a written custodial statement, which the district court summarized:

> Renteria blamed an Azteca gang member—nicknamed "Flaco"—and several other people for Flores's murder. He explained he met Flaco while serving time in prison, but claimed he did not know the other people. Renteria maintained he participated in the offense out of fear the other participants would harm his family. He claimed he was "scared and . . . didn't know how to react . . . because they were threatening [his] family." Renteria asserted he only lured Flores out of the Walmart and helped Flaco and the others burn and dispose of her body.

2

No. 19-70009

Just before trial began in September 2003, Renteria moved for a continuance after the State disclosed that the victim's mother was the former wife of a gang member. Renteria claimed that he needed more time to investigate whether the murder was gang-related, as his custodial statement had suggested. The trial court denied the continuance and did not admit Renteria's custodial statement into evidence at trial because it was self-serving.[1] *Renteria v. State*, 206 S.W.3d 689, 705—06. (Tex. Crim. App. 2006). The jury found Renteria guilty of capital murder. *Id.*

At his first sentencing trial, the jury found "there [was] a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society" and that there was not "sufficient mitigating… circumstances to warrant that a sentence of life imprisonment…rather than a death sentence be imposed." Based upon these answers, the trial court sentenced Renteria to death.

On direct appeal, the Texas Court of Criminal Appeals affirmed the guilty verdict but found that evidence of Renteria's remorse was improperly excluded at the punishment trial and vacated the death sentence. At his second punishment trial, the trial court re-sentenced Renteria to death, and the Court of Criminal Appeals affirmed. *Renteria v. State*, No. AP-74,829, 2011

---

[1] According to Texas law:

> [S]elf-serving declarations of the accused are ordinarily inadmissible in his behalf, unless they come under some exception, such as: being part of the res gestae of the offense or arrest, or part of the statement or conversation previously proved by the State, or being necessary to explain or contradict acts or declarations first offered by the State.

*Aldridge v. State*, 762 S.W.2d 146, 152 (Tex. Crim. App. 1988) (*quoting Singletary v. State*, 509 S.W.2d 572, 576 (Tex. Crim. App. 1974)).

3

Case: 19-70009 Document: 00515424703 Page: 4 Date Filed: 05/21/2020
Case 3:15-cv-00062-FM Document 130 Filed 05/21/20 Page 4 of 15

No. 19-70009

WL 1734067, at *1 (Tex. Crim. App. May 4, 2011).[2] The Supreme Court denied certiorari. *Renteria v. Texas,* 565 U.S. 1263 (2012).

After the Court of Criminal Appeals denied Renteria's three pending state applications for writs of habeas corpus, he filed for relief in the United States District Court for the Western District of Texas. The district court denied relief and a certificate of appealability. Renteria filed this timely appeal.

## II.

A state prisoner does not have "an absolute right to appeal" from a federal district court decision denying a petition for a writ of habeas corpus. *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (citing 28 U.S.C. § 2253(c)(1)). The prisoner must first obtain a certificate of appealability, which can be issued from this court "only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* (quoting 28 U.S.C. § 2253(c)(2)). That is, the petitioner must establish that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Our inquiry, here, is only a threshold question decided without "full consideration of the factual or legal bases adduced in support of the claims." *Buck*, 137 S. Ct. at 773 (quoting *Miller-El,* 537 U.S. at 336).

Additionally, "[i]n determining whether the district court's denial of a prisoner's petition is debatable, this court 'must be mindful of the deferential standard of review the district court applied to [the habeas petition] as required by the AEDPA.'" *Williams v. Stephens*, 761 F.3d 561, 566 (5th Cir.

---

[2] The Texas Court of Criminal Appeals has final appellate jurisdiction in criminal cases and, in death penalty cases, petitioners appeal to the Court of Criminal Appeals rather than to a Court of Appeals. TEX. CONST., Art. V, §§ 1,5.

Case: 19-70009 Document: 00515424703 Page: 5 Date Filed: 05/21/2020
Case 3:15-cv-00062-FM Document 130 Filed 05/21/20 Page 5 of 15

No. 19-70009

2014) (quoting *Miniel v. Cockrell*, 339 F.3d 331, 336 (5th Cir.2003)). Where the state court adjudicated the claim on the merits, "we must defer to the state court unless its decision 'was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States.'" *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(1)). A decision is contrary to clearly established law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412—413 (2000). The "unreasonable application" query focuses on whether "the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

## III.

First, Renteria claims that he was tried while incompetent in violation of the due process clause of the Fourteenth Amendment. And because his trial counsel failed to request a competency hearing and his habeas counsel failed to discover documentary evidence that he was not competent to stand trial, Renteria argues that he also received ineffective assistance of counsel in violation of the Sixth Amendment. Renteria concedes that because he did not present his substantive competency or his ineffective-assistance claim to any state court, they are unexhausted. Under the doctrine of procedural default, we are generally prohibited from reviewing the merits of such claims. *Martinez v. Ryan*, 566 U.S. 1, 9 (2012); *Bledsue v. Johnson*, 188 F.3d 250, 254 (5th Cir. 1999) (citing *Coleman v. Thompson,* 501 U.S. 722, 735 n.1(1991)) (The procedural default rule also applies where "the petitioner fails to exhaust all available state remedies, and the state court to which he would be required to petition would now find the claims procedurally barred.").

Instead, Renteria argues that his ineffective-assistance claim falls under the exception to the procedural default rule: "[a] prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law." *Martinez*, 566 U.S. at 10. In the context of an ineffective-assistance claim, cause can be established where "appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984)."[3] *Martinez*, 566 U.S. at 14 (cleaned up). "To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.* In other words, Renteria must prove that both his trial counsel and his habeas counsel were ineffective.

The district court found no merit to Renteria's underlying claim that his trial counsel's performance was constitutionally deficient. We do not find this conclusion debatable, so our analysis of Renteria's ineffective-assistance claim begins and ends there, and we need not address his habeas counsel's performance.

As to his trial counsel, Renteria claims that he ineffectively failed to request a competency hearing despite having allegedly clear-cut indicia of Renteria's incompetency. A person is incompetent to stand trial if the person does not have: (1) a rational as well as factual understanding of the proceedings against him or (2) sufficient present ability *to consult with his lawyer* with a reasonable degree of rational understanding. *Indiana v. Edwards*, 554 U.S.

---

[3] *Strickland* requires a showing that (1) defense counsel's performance was deficient and (2) this deficient performance prejudiced the defense. 466 U.S. at 687. We must find that trial counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id.* at 688. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.*

Case: 19-70009    Document: 00515424703    Page: 7    Date Filed: 05/21/2020
Case 3:15-cv-00062-FM   Document 130   Filed 05/21/20   Page 7 of 15

No. 19-70009

164, 170 (2008). Renteria argues the latter. Specifically, he points to a report issued by Dr. Alexandria H. Doyle (the Doyle Report)[4] indicating that: (1) Renteria suffered from dissociative amnesia, which rendered him "unable to provide some details of the circumstances and events"; and (2) his description of the events related to the death of the victim was "confabulated; that is, made up to cover an inability to remember."

The district court correctly observed that a dissociative amnesia diagnosis is not dispositive.[5] *Mays v. Stephens*, 757 F.3d 211, 216 (5th Cir. 2014) ("The two are not coextensive: A defendant can be both mentally ill and competent to stand trial."). Instead, in these amnesia cases, competency "is a question to be determined according to the circumstances of each individual case." *United States v. Swanson*, 572 F.2d 523, 526 (5th Cir. 1978).[6]

In performing that inquiry, the district court considered the Doyle Report along with numerous other factors bearing on Renteria's competency. For instance, despite the dissociative amnesia diagnosis, the Doyle Report itself also indicated that Renteria was "oriented appropriately, [] appeared to be able to relate to his attorneys, and generally was able to manage his emotional reactions, and think logically." Additionally, the court recognized that other psychological testing was conducted in 2002—at trial counsel's request—by Dr. James Schutte, a psychologist appointed by the court. Dr.

---

[4] Though the report itself is not dated, it reflects that Renteria was evaluated on 1/30/03 and 1/31/03 and bears fax transmittal information dated 1/16/03.

[5] Renteria argues that the district court erred in relying on cases that reject "amnesia"—as opposed to "dissociative amnesia"—as a viable trial defense. But such a distinction is irrelevant because, again, the specific diagnosis is not the key inquiry and was only a factor in the district court's determination that "Renteria's claim—that his dissociative amnesia rendered him incompetent—simply fails."

[6] This is in recognition that "the district judge is in the best position to make a determination between allowing amnesia to become an unjustified haven for a defendant and, on the other hand, requiring an incompetent person to stand trial." *Id.* at 526.

Case: 19-70009 Document: 00515424703 Page: 8 Date Filed: 05/21/2020
Case 3:15-cv-00062-FM Document 130 Filed 05/21/20 Page 8 of 15

No. 19-70009

Schutte's report[7] concluded that Renteria was "well within the normal range" and reflected that he had a penchant for responding untruthfully. Most importantly, at the time of his December 2001 arrest, Renteria gave a "five-page, single spaced, typewritten custodial statement to the police," which provided "meticulous details" about various aspects of the crime. Having that statement enabled trial counsel to investigate whether, as Renteria told the police, the victim was murdered by an Azteca gang member. Indeed, trial counsel even questioned the victim's mother (outside the presence of the jury) regarding her husband and ex-husband's potential gang affiliations.

In due consideration of all of the foregoing, the district court determined that Renteria failed to establish the requisite "real, substantial and legitimate doubt as to the mental capacity of the petitioner to meaningfully participate and cooperate with counsel during a criminal trial." *Bruce v. Estelle*, 536 F.2d 1051, 1058–59 (5th Cir. 1976) (quoting *Bruce v. Estelle*, 483 F.2d 1031, 1043 (5th Cir. 1973)). It followed, then, that Renteria did not overcome the "strong presumption" that his trial counsel's decision to forego a competency hearing was "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. No jurist of reason could debate the district court's conclusions.

That trial counsel formed a defense strategy around Renteria's police statement does not, as Renteria argues, raise questions about his mental health or trial counsel's effectiveness.[8] This is true even crediting the Doyle Report's vague assessment that Renteria's "descriptions of *some* of his actions are incredible and appear confabulated" (emphasis added). The record

---

[7] Dr. Schutte's report, like Dr. Doyle's is not dated but has fax transmittal information dated 6/17/2002, and the district court opinion notes that counsel requested an appointment with Dr. Schutte at a March 2002 hearing.

[8] We note that Renteria's argument, in this regard, seems disingenuous considering that his brief later advances a defense theory that also relies on the veracity of Renteria's police statement.

Case: 19-70009    Document: 00515424703    Page: 9    Date Filed: 05/21/2020
Case 3:15-cv-00062-FM   Document 130   Filed 05/21/20   Page 9 of 15

No. 19-70009

demonstrates that trial counsel's decision to pursue this defense was made after he weighed the Doyle Report against his own thorough investigation into Renteria's competency and the other information that was available to him.[9] Indeed, counsel requested two mental health evaluations and there was a "rumor from the gang investigators in El Paso County," which could have confirmed Renteria's supposedly confabulated police statement. These types of "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690.

Thus, we are also unable to debate the district court's conclusion that pursuing this defense "was a reasonable, strategic decision based on the facts known to counsel at the time of trial."[10] *Livingston*, 107 F.3d at 306; *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997) (finding effective assistance where "[t]here [wa]s sufficient evidence demonstrating that the decision not to proffer an insanity defense was a conscious and informed tactical one.") (internal quotations removed). Renteria's first argument does not provide grounds to issue a certificate of appealability.

## IV.

Renteria next variously argues that his Sixth, Eighth, and Fourteenth Amendment rights were violated when the trial court precluded testimony from his parole expert, William Habern. During Renteria's punishment trial, the jury was instructed, in accordance with Article 37.071 of the Texas Code of

---

[9] The postconviction declaration by Renteria's psychologist agreeing that his symptoms were consistent with dissociative amnesia are irrelevant to our inquiry here. Trial counsel is judged on by the "facts known to [him] *at the time of trial*." *Livingston v. Johnson*, 107 F.3d 297, 306 (5th Cir. 1997) (emphasis added).

[10] We also find no error in the district court's decision to deny Petitioner's request for an evidentiary hearing. Renteria has identified no factual dispute, which if resolved in his favor, would entitle him to relief. *See Garcia v. Davis*, 704 F. App'x 316, 324-25 (5th Cir 2017) (*citing Norman v. Stephens*, 817 F.3d 226, 235 (5th Cir. 2016)).

Case: 19-70009     Document: 00515424703     Page: 10     Date Filed: 05/21/2020
Case 3:15-cv-00062-FM   Document 130   Filed 05/21/20   Page 10 of 15

No. 19-70009

Criminal Procedure, that if Renteria was sentenced to a life term, he would become eligible for release on parole after the actual time served by the defendant equaled forty years. The jury was also informed of Renteria's additional twenty-year and ten-year sentences for his child indecency offense and driving while intoxicated felony, respectively.

Mr. Habern was prepared to testify that Renteria would not be eligible for parole for 47.5 years. The seven-and-a-half-year year discrepancy was the product of Mr. Habern's calculation that Renteria would be required to serve part of those twenty-year and ten-year sentences on top of his life sentence. Because the jury was instructed that he would become parole eligible seven-and-a-half years early, Renteria contends, he was sentenced based upon jurors' consideration of false information in violation of his due process rights. The district court disagreed, and we do not find its conclusion debatable.

Renteria is correct that a sentencer's consideration of false information material to the sentencing decision renders the sentencing procedure invalid as a violation of due process. *Townsend v. Burke*, 334 U.S. 736, 740-741 (1948); *United States v. Tucker*, 404 U.S. 443, 447 (1972). To that end, the district court found that:

> [T]he jury had before it evidence that Renteria would serve at least 40 calendar years on a life sentence for capital murder of Flores, Renteria faced additional sentences of twenty years for indecency with a child and ten years for felony DWI, and Renteria's expert witness opined the State would never release him from prison. Renteria has not met his burden of showing his due process rights were violated because he was, in fact, sentenced based on accurate information. He is not entitled to habeas relief on his due process claim.

Renteria faults the district court for conflating "parole eligibility, which is an objective fact that can be readily determined" with "when a person will actually be paroled, which is admittedly a more subjective and less certain

10

Case: 19-70009 Document: 00515424703 Page: 11 Date Filed: 05/21/2020
Case 3:15-cv-00062-FM Document 130 Filed 05/21/20 Page 11 of 15

No. 19-70009

determination." But this argument fails because at the time of Renteria's punishment trial, it was unknown whether his life sentence would be "stacked" onto the prior sentences or served concurrently. Mr. Habern's proffered testimony that Renteria's sentences would be stacked and, therefore, that he would not be eligible for parole for 47.5 years was pure speculation. Mr. Habern conceded as much. Indeed, the only knowable fact regarding Renteria's parole was—as the trial court instructed—that once he began serving a life sentence, Renteria would be eligible after forty years.[11] We therefore agree with the district court and cannot say that Renteria's sentence was predicated on inaccurate information. *Rhoades v. Davis*, 914 F.3d 357, 375 (5th Cir.), *cert. denied*, 140 S. Ct. 166 (2019) (permitting testimony that defendant "would have been technically eligible for emergency furlough had he received a life sentence" even where such a furlough was unlikely).

Nor was Renteria entitled to present Mr. Habern's testimony to explain, deny, or mitigate evidence of his future dangerousness. Renteria's claim, at its core, relies on *Simmons v. South Carolina,* 512 U.S. 154 (1994). In *Simmons*, the Supreme Court held that due process requires a sentencing jury considering a death sentence be informed if a defendant is parole ineligible. *Id.* at 156. But as explained by the district court, Renteria does not enjoy such a right because our circuit has "reject[ed] an extension of *Simmons* beyond situations in which a defendant is statutorily ineligible for parole." *Montoya v. Scott*, 65 F.3d 405, 416 (5th Cir. 1995). Where, as here, "a defendant's ineligibility is a matter of fact, i.e., the defendant *probably* will not be eligible for parole, then the evidence is purely speculative (maybe even inherently 'untruthful') and therefore cannot positively deny future dangerousness."

---

[11] For this same reason, the jury was not presented with a "false choice of sentencing options" in violation of the Eighth Amendment. As explained *supra*, there was nothing false or misleading about the jury instruction provided.

Case: 19-70009 Document: 00515424703 Page: 12 Date Filed: 05/21/2020
Case 3:15-cv-00062-FM Document 130 Filed 05/21/20 Page 12 of 15

No. 19-70009

*Allridge v. Scott*, 41 F.3d 213, 222 (5th Cir. 1994). Renteria has made no argument justifying a divergence from our precedent in this instance.

Because a reasonable jurist could not debate the district court's conclusions—that the state court did not rule contrary to, nor did it unreasonably apply, law articulated by the Supreme Court— we cannot issue a certificate of appealability on Renteria's second argument either.

## V.

Finally, Renteria seeks review of the district court's denial of his motion for additional funding to investigate a new witness statement that allegedly corroborates his custodial statement. "We review the denial of funding for investigative or expert assistance for an abuse of discretion. [A] COA is not necessary to appeal the denial of funds for expert assistance or investigative services." *Wilkins v. Davis*, 832 F.3d 547, 551–52 (5th Cir. 2016) (internal citations omitted). "In those cases in which funding stands a credible chance of enabling a habeas petitioner to overcome the obstacle of procedural default, it may be error for a district court to refuse funding." *Ayestas v. Davis*, 138 S. Ct. 1080, 1094 (2018). Therefore, the court did err in denying Renteria's motion on grounds that his claims are unexhausted.

Rather, district courts are to determine whether the "the proposed services . . . [are] '*reasonably* necessary' for the applicant's representation." *Id.* at 1094. Whether the service is reasonably necessary depends, in part, upon "the potential merit of the claims that the applicant wants to pursue." *Id.* Renteria posits that further investigation into the new witness statement "could be relevant" to three claims: (1) a claim under *Brady v. Maryland*[12]; (2)

---

[12] 373 U.S. 83, (1963). A *Brady* violation occurs when the prosecution fails its affirmative duty to produce "evidence favorable to an accused . . . where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. "[T]he duty to disclose such evidence is applicable even though there has been no request by the accused." *Strickler v. Greene*, 527 US 263, 279 (1999).

Case: 19-70009 Document: 00515424703 Page: 13 Date Filed: 05/21/2020
Case 3:15-cv-00062-FM Document 130 Filed 05/21/20 Page 13 of 15

No. 19-70009

a new claim for ineffective assistance of counsel; and (3) an actual innocence claim. The statement expresses that the witness' ex-husband told her information relating to the death of Flores.

As to Renteria's *Brady* and ineffective-assistance claims, both lack merit for the same reason: the statement was not provided to police until April 23, 2018—long after Renteria was convicted and sentenced in fall 2003. In her statement, the witness expressed that she did not come forward "back then because [she] was afraid" her ex-husband would retaliate against her and her children. Thus, she did not inform authorities that she suspected her ex-husband's involvement in Flores' death until April 23, 2018.[13] Accordingly, at the time of trial, there was no witness statement that the prosecution could have "suppressed" for the purpose of a *Brady* claim. *United States v. Cutno*, 431 F. App'x 275, 277 (5th Cir. 2011). Nor can Renteria establish that his trial counsel's performance was deficient for failing to find a document that did not exist. *Newbury v. Stephens*, 756 F.3d 850, 860 (5th Cir. 2014) (affirming district court's holding that "trial counsel could not be expected to discover and present evidence that no longer existed."). Finally, Renteria's last claim also fails because "claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). As established herein, no such constitutional violation occurred.

---

[13] Renteria insists that the witness is "equivocal" on whether she provided information on his case before his trial. He points to a paragraph where the witness explains that her ex-husband was arrested for an unrelated attempted murder and that she "did talk to detectives on that case, and [] gave a written statement back then." The statement she references is clearly one given regarding her ex-husband's attempted murder case, not Renteria's. She did not indicate when the statement was given, who it was given to, or describe the substance of the statement. We are not convinced that such a statement could support Renteria's *Brady* or ineffective-assistance claims.

No. 19-70009

In sum, although the district court erred, we find remand unnecessary. Renteria seeks funds to pursue claims that lack merit; therefore, the funding he seeks is for investigative services not reasonably necessary for his representation. *Ayestas*, 138 S. Ct. at 1094.

## VI.

We deny Renteria's application for a certificate of appealability and affirm the district court's denial of his motion for additional funding.

**Certified as a true copy and issued as the mandate on May 21, 2020**

**Attest:** *Lyle W. Cayce*
**Clerk, U.S. Court of Appeals, Fifth Circuit**

# *United States Court of Appeals*

**FIFTH CIRCUIT**
OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
**Suite 115**
**NEW ORLEANS, LA 70130**

May 21, 2020

Ms. Jeannette Clack
Western District of Texas, El Paso
United States District Court
525 Magoffin Avenue
Room 108
El Paso, TX 79901-0000

    No. 19-70009   David Renteria v. Lorie Davis, Director
                        USDC No. 3:15-CV-62

Dear Ms. Clack,

Enclosed is a certified copy of the opinion issued as the mandate.

                              Sincerely,

                              LYLE W. CAYCE, Clerk

                              By: _____
                              Nancy F. Dolly, Deputy Clerk
                              504-310-7683

Enclosure(s)

cc:  Mr. Jefferson David Clendenin
     Mr. Edward Larry Marshall
     Ms. Kate Sauer Pumarejo
     Mr. Michael Wiseman